UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ROBERT L. DYKES,

        Plaintiff,

        Case No. 2:22-cv-110

v.

        Honorable Robert J. Jonker

SARAH SCHROEDER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Warden Sarah Schroder and Chaplain Unknown Prunick.

Plaintiff alleges that he has practiced as a Moorish American Muslim since 1991, and that he sincerely believes that during each meeting of the Moorish Science Temple of America, the temple must be set up as instructed by founder and holy prophet Noble Drew Ali. (ECF No. 1, PageID.4.) Those instructions include: (1) hanging of the American and Moorish flags; (2) hanging of the Warrant of Authority; (3) establish seating for head officials, members, and guests; (4) recitation of the opening prayer; (5) reading of the constitution and by-laws; (6) reading of the additional laws; (7) reading from the Holy Koran of the Moorish Science Temple of America; (8) presentation of speakers; (9) reading of the minutes; (10) reading of the Divine Warning; and (11) the closing prayer. (*Id.*, PageID.4–5.) Plaintiff believes that he must obey Noble Drew Ali's instructions because Ali was "divinely prepared" by Allah. (*Id.*, PageID.5.)

Plaintiff avers that on February 3, 2022, Defendants shortened his worship time from one hour to half an hour, without notice or explanation. (*Id.*) Plaintiff contends that religious groups at LMF have always had an hour each to "worship and practice their sincerely held beliefs." (*Id.*) On February 3, 2022, Defendant Prunick met with Plaintiff to interview him regarding the alternative menu. (*Id.*) After the interview was over, Plaintiff asked Defendant Prunick "about the rumor that she had reduced all religious groups worship time down to 30 minutes." (*Id.*, PageID.6.) Defendant Prunick confirmed this information, noting that some groups had grown to more than 15 members, causing the creation of two separate groups of that religion to maintain social distancing. (*Id.*) Defendant Prunick stated that with the creation of more groups, she did not have time to perform her other duties, so to make time, she "cut every religious group time for worship down to a half an hour." (*Id.*) The decision was made in consultation with Defendant Schroeder. (*Id.*)

Later that day, Plaintiff asked Defendant Schroeder about the decision to reduce worship time. (*Id.*) He asked if it was an executive decision from MDOC headquarters or her own decision. (*Id.*) Defendant Schroeder told Plaintiff that she authorized the action to give Defendant Prunick more time to perform other duties. (*Id.*) Plaintiff asked for a copy of the decision in writing; Defendant Schroeder responded, "You don't need anything in writing, I'm telling you now." (*Id.*) Plaintiff subsequently grieved the issue. (*Id.*)

Plaintiff claims that because of this decision, he only received half an hour of worship time on February 3, 10, 17, and 24, 2022. (*Id.*, PageID.7.) On these occasions, he was unable to read the proclamation or make the closing prayer. (*Id.*) "After a number of grievances and complaints, the normal hour was restored." (*Id.*) Plaintiff alleges, however, that on the four occasions where he received only a half hour of worship time, his ability to communicate with Allah was hampered. (*Id.*)

Plaintiff argues that Defendants did not give notice to the LMF population about the change, and that they did not have authority to make this change because any policy directive changes must occur in Lansing. (*Id.*) Plaintiff argues that at the time, there were only 7 members of the Moorish Science Temple in attendance, and that the Level Two Moorish Science Temple group only had one call-out, "therefore the explanation that groups are exceeding 15 [members] was not applicable" to the Moorish Science Temple. (*Id.*) Plaintiff avers that other religious groups also had less than 15 members, "making the Defendants' claim specious, and not a legitimate penological interest." (*Id.*, PageID.8.)

Based on the foregoing, Plaintiff asserts violations of his First Amendment free exercise rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act

3

(RLUIPA), 42 U.S.C. § 2000cc, *et seq*. (ECF No. 1, PageID.8.) Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.8–9.)

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted *supra*, Plaintiff contends that Defendants violated his rights under the First Amendment and RLUIPA by cutting worship time from one hour to half an hour for a period of four weeks. Plaintiff alleges that because of the shortened worship period, he was hampered in practicing his religion because he could not read the proclamation or conduct the closing prayer.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

Plaintiff has sufficiently alleged his sincerely held religious beliefs, and there is no doubt that prayer is a religious practice. The next consideration is "whether the challenged practice of

the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch*, 627 F. App'x at 485 (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 20014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The Court's analysis of Plaintiff's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.*, § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims. *See Living Water*, 258 F. App'x at 733–34. Thus, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or

places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

### A. Free Exercise

As noted above, Plaintiff contends that Defendants substantially burdened his religious exercise on four occasions in February of 2022 by shortening the allotted period for worship from one hour to half an hour. (ECF No. 1, PageID.7.) Plaintiff avers that because of the shortened period, he was unable to read the proclamation or conduct the closing prayer during these four Moorish Science Temple worship sessions. (*Id.*)

Plaintiff fails to show that Defendants' temporary shortening of worship times substantially burdened the practice of his religion. "Isolated acts or omissions . . . do not constitute a substantial burden on religious freedom." *Mubashshir v. Moore*, No. 3:10-cv-2802, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (collecting cases); *see also Bennett v. Burt*, No. 1:16-cv-1203, 2016 WL 7034240, at *4 (W.D. Mich. Dec. 2, 2016) (collecting cases that support the proposition that "[b]urdens that are less than substantial or isolated are not of constitutional dimension" (citations omitted)). Plaintiff does not allege that he was unable to conduct his religious practice at all during this time. At most, Plaintiff's inability to read the proclamation or conduct the closing prayer

7

during the four days on which worship services were shortened to half an hour appears to be a de minimis burden on Plaintiff's Moorish Science Temple practice. Plaintiff himself admits that the shortened worship periods lasted for a month before the hour-long sessions were restored. Because Plaintiff has not alleged that his religious practice was substantially burdened by Defendants' temporary decision to shorten worship times, his First Amendment free exercise claims will be dismissed.

### B. RLUIPA

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011)[1]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[2] Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046,

---

[1] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[2] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

1049 (6th Cir. 1994). In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Here, Plaintiff sues Defendants in their individual and official capacities, and he seeks only monetary damages in this action. (ECF No. 1, PageID.2–3, 8–9.) As noted above, Plaintiff may not maintain a RLUIPA claim against Defendants in their individual capacities, and he may not maintain claims for monetary damages against Defendants in their official capacities. Therefore, Plaintiff's RLUIPA claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: June 16, 2022 /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE